UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

RANDALL D. TOMLINSON,            )
                                 )
    Plaintiff,                   )         No. 7:11-CV-00140-KSF
                                 )
V.                               )
                                 )         **MEMORANDUM OPINION**
ERIC HOLDER, *et al*.,           )         **AND ORDER**
                                 )
    Defendants.                  )

\*\* \*\* \*\* \*\* \*\*

Randall D. Tomlinson, confined in the United States Penitentiary-Big Sandy ("USP-Big Sandy") located in Inez, Kentucky, has filed a *pro se* Complaint, and an Amended Complaint, in which he asserts civil rights claims under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). [R. 1; R. 6].[1] Tomlinson has now supplemented his Amended Complaint. [R. 9 & 10].

As Tomlinson has been granted *in forma pauperis* status and is asserting claims against government officials, the Court now screens his Complaint and Amended Complaint pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B). Both of these sections require a district court to dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from defendants who are immune from such relief. *Id*.; *see also McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

For the reasons set forth below, Tomlinson's constitutional claims which arose in Florida will be transferred to the proper federal court in Florida; his constitutional claims which arose at USP-Big

---

[1] Tomlinson was directed to file an Amended Complaint, [R. 6], because his original Complaint, [R. 1], was incomplete.

Sandy will be *sua sponte* dismissed without prejudice for lack of administrative exhaustion; and his claims challenging a recent disciplinary sanction at USP-Big Sandy will be dismissed without prejudice to his exhausting those claims in the proper manner.

**ALLEGATIONS OF THE AMENDED COMPLAINT**

Tomlinson has been in the custody of the Bureau of Prisons ("BOP") since 1994. He alleges that beginning in 2001, while confined in the United States Penitentiary-Beaumont, located in Beaumont, Texas, he began having problems with a segment of the inmate population known as the Texas Aryan Brotherhood ("TAB"), a white racist prison gang. Tomlinson was transferred to the United States Penitentiary-McCreary, located in Pine Knot, Kentucky, where he alleges no TAB inmates were confined, but on March 8, 2011, he was then transferred to the United States Penitentiary (I), located in Coleman, Florida ("USP(I)-Coleman").

Tomlinson states that on March 9, 2011, one day after arriving at USP(I)-Coleman, TAB inmates physically assaulted him and inflicted serious bodily injuries on him, including but not limited to a broken nose. Although Tomlinson alleges that Defendant Mark Tidwell, M.D., the Medical Director of USP(I)-Coleman, rendered some medical treatment to him, he alleges that Tidwell failed to order X-rays and a magnetic resonance imaging test; failed to provide him with pain medication; and otherwise failed to properly diagnose and treat his injuries. Tomlinson alleges that he currently experiences pain and other problems stemming from his injuries.

Tomlison states that on August 5, 2011, just days after being transferred to USP-Big Sandy, he was involved in an altercation with TAB inmates. In the process of defending himself from TAB inmates, Tomlinson was charged with and convicted of "fighting," a BOP disciplinary infraction, and as a result, lost 27 days of good-time credit ("GTC").

Tomlinson alleges that in August and September 2011, he submitted several informal BP-8 administrative remedies to Case Manager "Snyder" and Counselor "Lee," [R. 6, p. 6], although it is unclear what issue he raised in the informal remedy requests, *i.e.*, whether they concerned his transfer to USP-Big Sandy, or the disciplinary conviction and loss of GTC. Tomlinson states that his administrative exhaustion efforts ". . . have been unsuccessful, as they are lost or disregarded." [*Id.*, p. 4].

Tomlinson alleges that on August 16, 2011, a Special Investigative Officer at USP-Big Sandy, by the name of "Lincoln," threatened him. [R. 6, p. 3]. In one recent filing entitled "Advisement Request Motion," Tomlinson alleged that on October 7, 2011, two unidentified USP-Big Sandy employees verbally threatened him by telling him that his lawsuit ". . . should get dropped, or else." [R. 9, p. 1]. In his "Affidavit," Tomlinson reiterated his prior allegation that his disciplinary conviction and loss of 27 days of GTC were unfair because he was merely defending himself against the TAB, and because prison staff was retaliating against him. [R. 10].

Tomlinson alleges that Jose Santos, Chief Designator of the BOP's Designation and Sentence Computation Center ("DSCC") in Grand Prairie, Texas, improperly ordered his transfer both to USP(I)-Coleman and to USP-Big Sandy. Tomlinson alleges that because Scott Middlebrook, the Warden of USP(1)-Coleman, allowed the TAB inmates to assault and injure him while he was confined in USP(I)-Coleman, he is therefore liable for damages.

Tomlinson's claims, challenging both the medical and non-medical conditions of his confinement, fall under the Eighth Amendment of the United States Constitution, which prohibits cruel and unusual punishment. Tomlinson's claims challenging his disciplinary conviction and

sanction (loss of 27 days of GTC) fall under the Fifth Amendment of the United States Constitution, which guarantees due process of law.

Tomlinson seeks a transfer to the custody of the Colorado Department of Corrections to serve the remainder of his sentence; unspecified damages to compensate him for his injuries, pain, and suffering; and a reprimand of all of the named defendants.

## DISCUSSION
1. Eighth Amendment Claims Against Defendants Holder and Santos

Tomlinson's claims against Defendants Eric Holder, United States Attorney General, and Jose Santos, Chief Designator of the BOP's DSCC, must be dismissed without prejudice because it is clear from Tomlinson's Amended Complaint that he failed to fully exhaust those claims prior to filing this action.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires state and federal prisoners to exhaust all available administrative remedies before filing suit challenging any aspect of their prison conditions. The four-tiered administrative remedy scheme available to BOP inmates complaining about any aspect of their confinement is set out in the BOP's Administrative Remedy Program, found at 28 C.F.R. §§ 542.10-542.19.[2]

---

[2] The multi-step administrative remedies available to inmates confined in BOP institutions are set out in 28 C.F. R. §542.10-.19. Section 542.13(a) demands that an inmate first informally present his complaint to the staff [BP-8 form], thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request to the Warden [BP-9]. *See* §542.14(a). If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director [BP-10], and, if not satisfied with the Regional Director's response, the inmate may appeal that decision to the Office of General Counsel [BP-11]. *See* §542.15.

The administrative procedure includes established response times. §542.18. As soon as an appeal is accepted and filed, the Warden has 20 days to respond; the Regional Director, 30 days; and General Counsel, 40 days. Only one extension of time of 20-30 days, in writing, is permitted the agency. If the inmate does not receive a response within the allotted time, including extension, he

The Supreme Court of the United States has twice held that the statute means precisely what it says. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Additionally, in *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that exhaustion of administrative remedies must be done "properly," which means going through all steps that the agency holds out, obeying all directions, and adhering to all deadlines set by the administrative rules. *Id*. at 90.

Further, when the affirmative defense of failure to exhaust appears on the face of a complaint, a district court can dismiss the complaint *sua sponte* on the ground that it fails to state a claim. *Jones v. Bock*, 549 U.S. 199, 214-15 (2007); 28 U.S.C. § 1915A(b)(1)); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) (holding that a case under the PLRA can be dismissed *sua sponte* for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust his administrative remedies).

It is clear from the face of Tomlinson's Amended Complaint that he has not properly exhausted his Eighth Amendment claims against Holder and Santos. Tomlinson stated that he submitted his BP-8 requests on various dates in August and September 2011. Absent extensions, the remainder of the BOP administrative remedy process takes about ninety (90) days to complete. Tomlinson filed this action on September 7, 2011, long before the rest of the administrative exhaustion process could have possibly run its course. In other words, Tomlinson short-circuited the BOP's exhaustion process by filing this lawsuit on September 7, 2011. Further, to the extent Tomlinson alleges that unidentified USP-Big Sandy officials threatened him as recently as October

---

may consider the absence of response as a denial at that level. *Id.*

7, 2011, Tomlinson again could not possibly have exhausted any claims stemming from that alleged incident.

This Court, and other district courts in this circuit, have held that in light of *Jones*, *sua sponte* dismissal of a complaint is warranted where failure to exhaust is apparent from the face of the complaint. *Walker v. Baker*, No. 6:10-CV- 68-ART (E.D. Ky.) [R. 9 & 10, June 24, 2010]; *Smith v. Lief*, No. 5:10-00008-JMH, 2010 WL 411134 at *4 (E.D. Ky. January 27, 2010); *Gunn v. Kentucky Depart. of Corrections*, No. 07-103, 2008 WL 2002259 at * 4 (W.D. Ky. May 7, 2008); *Deruyscher v. Michigan Dept. of Corrections Health*, No. 06-15260-BC, 2007 WL 1452929 at *3 (E.D. Mich. May 17, 2007).

Tomlinson incorrectly asserts that because he received no responses to his BP-8 requests seeking informal resolution, he was unable to complete the remaining three steps of the BOP administrative remedy process. Assuming as true that Tomlinson did not receive responses to any of the informal remedies which he claims he submitted to his Case Manager and Counselor in August and September 2011, such responses were not required in order to comply with the remaining three steps of the BOP's administrative remedy process.

Nothing in 28 C.F.R. § 542.14 requires an inmate to produce written denial of a BP-8 request prior to submitting a formal grievance, a BP-9 "Request for Administrative Remedy," to the Warden. Tomlinson could have submitted a BP-9 "Request for Administrative Remedy" concerning his claim, or claims, to Warden Berkebile within twenty days of the complained-of event, regardless of the fact that he had not received responses to his BP-8 informal requests from either his Case Manager or his prison Counselor.

6

This Court, and other courts, have held that a prison official's failure to respond to informal grievances does not prevent a prisoner from pursuing formal grievances. In *Red Kettle v. Lappin*, No. 08-02029, 2009 WL 2044703 (W. D. La. July 8, 2009), the district court rejected the prisoner's argument that the prison staff's failure to respond to his informal grievances prohibited him from seeking further administrative review, as "an improper interpretation of the administrative remedies procedures." *Id*. at *2. *See also*, *Petty v. Rush*, No. 08-CV-159-GFVT, 2010 WL 1799996573 at *2 (E.D. Ky. May 4, 2010) (same); *Fjerstad v. Palmquist*, No. 08-00274, 2008 WL 4331633 at *3 (W.D. Wash. September 17, 2008) (same); *Jammes v. Alachua County Jail*, No. 05-00052, 2007 WL 2826069 at * 5 (N. D. Fla. September 25, 2007) (same); *Williams v. Martin*, No. 04-0377, 2006 WL 1835110 at * 5 (N. D. Ga. June 30, 2006).

Furthermore, 28 C.F.R. § 542.18, states that "If the Request is determined to be of an emergency nature which threatens the inmate's immediate health or welfare, the Warden shall respond not later than the third calendar day after filing." [*Id*.] Tomlinson has not alleged that he notified Warden Berkebile that he considered any of his issues to be of an emergency nature. Tomlinson should pursue such action if he contends that his housing status jeopardizes his safety.

Tomlinson has another available administrative remedy, which is the shorter, two-step administrative remedy procedure sent forth in 28 C.F.R. § 542.14(d)(1). This remedy is available to federal prisoners who believe that they have "sensitive" claims. Pursuant to § 542.14 (d)(1), a federal prisoner who believes his "safety or well-being would be placed in danger if the Request became known at the institution," circumvents the prison staff and submits his remedy request directly to the appropriate BOP Regional Director.

7

Accordingly, Tomlinson's Eighth Amendment claims against Holder and Santos, which challenge the conditions of his confinement, will be dismissed without prejudice to Tomlinson filing another *Bivens* action after he has completed the administrative remedy process.

## 2. Construed Challenge to Disciplinary Conviction

Tomlinson complains about his disciplinary conviction and the resulting sanction (loss of 27 days of GTC). However, filing a BP-8 request seeking an informal resolution is not the proper method of challenging a disciplinary sanction imposed by a Disciplinary Hearing Officer ("DHO"). Under 28 C.F.R. § 542.14(d)(2), all DHO appeals must be initially submitted to the BOP Regional Director for the region where the inmate is confined.[3] In such cases, the inmate by-passes filing an administrative remedy with either the prison staff or the Warden.

Tomlinson is further advised that he must challenge his disciplinary conviction by way of a petition for writ of habeas corpus, under 28 U.S.C. § 2241, not by way of a *Bivens* civil rights action. Tomlinson does not allege that his recent disciplinary conviction at USP-Big Sandy has been set aside, reversed or otherwise called into question by a tribunal authorized to do so. Unless and until Tomlinson's disciplinary conviction has been reversed, set aside, or called into question in a § 2241 habeas corpus proceeding or other tribunal, he cannot assert a *Bivens* claim because success in a *Bivens* action would necessarily imply the invalidity of his disciplinary conviction, an impermissible result. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997); *Lanier v. Bryant*, 332 F.3d 999, 1005 (6th Cir. 2003) (applying *Balisok* to *Bivens* actions); and *Johnston v. Sanders*, 86 F. App'x 909, 910 (6th Cir. 2004).

---

[3] The BOP regional office for federal prisons located in Kentucky is the Mid-Atlantic Regional Office.

Accordingly, Tomlinson's Fifth Amendment claims challenging his disciplinary conviction and loss of GTC will be dismissed without prejudice to Tomlinson fully exhausting those claims under 28 C.F.R. § 542.14(d)(2) and successfully challenging his conviction by way of a 28 U.S.C. § 2241 habeas corpus petition.

### 3. Eighth Amendment Claims Against USP(I)-Coleman Defendants

Tomlinson's Eighth Amendment claims against Scott Middlebrook, Warden of USP(I)-Coleman, and Mark Tidwell, M.D., of USP(I)-Coleman, will be transferred to the United States District Court for the Middle District of Florida ("the Middle District of Florida") for disposition.

Proper venue in civil rights claims is governed by the general venue statute, 28 U.S.C. § 1391. Section 1391(e) provides a special venue provision for any action in which at least one of the defendants is an officer or employee of the United States or its agencies acting in his or her official capacity or under color of legal authority. *See* 28 U.S.C. § 1391(e). Although Defendants Holder and Santos are federal officials, which fact would have rendered venue in this Court proper under § 1391(e), the claims against Holder and Santos have been dismissed. Thus, the only remaining defendants are Middlebrook and Tidwell. Tomlinson alleges that both of these defendants are officials employed at USP(I)-Coleman, which is located in Coleman, Florida, which in turn is located in the judicial district of the Middle District of Florida. Thus, these two defendants most likely reside in the Middle District of Florida.

Even where venue is proper, 28 U.S.C. § 1404(a) permits a district court to transfer a case to another district where it might have been brought when doing so would serve the convenience of the parties or the interests of justice. The Sixth Circuit has emphasized that "[a]s the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when

9

party 'convenience' or 'the interest of justice' makes a transfer appropriate." *Reese v. CNH America, LLC*, 574 F.3d 315, 320 (6th Cir.) (Ryan, Gibbons, Sutton ), *reh'g denied*, 583 F.3d 955 (6th Cir. 2009).

A district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, "such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc*., 929 F.2d 1131, 1137 (6th Cir.1991) (citing *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 30 (1988)). The Court will therefore examine whether the convenience of the parties and the interests of justice justify transferring the venue of this action to the Middle District of Florida.

Tomlinson does not allege that either Middlebrook or Tidwell reside in this district or that they have any other connection to this district. All of the alleged actions giving rise to Tomlinson's claims against Middlebrook and Tidwell transpired at USP(I)-Coleman, which, as noted, is located in the Middle District of Florida. Potential witnesses presumably reside or could be located in that district; and relevant documents, if any, are presumably located in the Middle District of Florida. To the extent that Tomlinson asserts constitutional claims against Middlebrook and Tidwell in their individual capacities, allowing this action to proceed here based solely upon venue considerations set forth in 28 U.S.C. § 1391(e) becomes even less attractive. If this action remains in this district, Middlebrook and Tidwell would most likely argue with good reason that any individual capacity claims against them should be dismissed for lack of *in personam* jurisdiction.

A defendant must have purposefully established minimum contacts within the forum State before personal jurisdiction will be found to be reasonable and fair. *International Shoe Co. v.*

10

*Washington*, 326 U.S. 310, 316-19 (1945). In order to establish minimum contacts, a plaintiff must show that the defendant should reasonably anticipate being hauled into court in the forum State, because he purposefully availed himself of the privilege of conducting activities there. *Id.*; *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 380 (6th Cir. 1968). Put another way, "the relevant inquiry is whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen v. Matthews*, 935 F.2d 1454, 1459-50 (6th Cir. 1991) (citations omitted).

There is no evidence that either of these presumably Florida-domiciled defendants have such minimum contacts with the Commonwealth of Kentucky that exercising personal jurisdiction over them would be constitutionally permissible. Neither defendant could have foreseen or anticipated being hauled into court in Kentucky. Presumably, the only reason Tomlinson filed this action in this district is the fact he is now incarcerated here. Finally, to the extent that Tomlinson asserts individual capacity claims against Middlebrook and Tidwell about events alleged to have occurred in the Middle District of Florida, a federal court in Florida is in a better position to determine which Texas statute-of-limitations, or other relevant Texas statute, may apply.

The alleged acts and omissions against Middlebrook and Tidwell did not occur in this district and neither of them, in their individual capacities, appear to have any nexus with the Eastern District of Kentucky. Accordingly, the interests of justice strongly warrant transferring the remaining claims against them to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a), as this Court has done under similar circumstances. *See, e.g.*, *See Coleman v. Lappin*, No. 10-186-GFVT, 2011 WL 4586922 at *4 (E. D. Ky. September 29, 2011) (transferring claims that arose in a federal prison in

Indiana to the federal court in Indiana); *Jeburk v. Brown*, No. 7:10-CV-58-ART (E.D. Ky) (D. E. 4, June 1, 2010); *Abdur-Rahim v. Doe*, No. 7:08-CV-00224-ART, 2009 WL 678348 at *3, (E.D. Ky. March 11, 2009).

Finally, a court may *sua sponte* transfer a case pursuant to § 1404(a) even though it was filed in the proper venue at the outset. *See Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 738 (6th Cir. 2003); *Carver v. Knox County, Tenn.*, 887 F.2d 1287, 1291 (6th Cir. 1989). The Court will therefore *sua sponte* transfer Tomlinson's claims against Middlebrook and Tidwell to the Middle District of Florida for all further disposition.

## CONCLUSION

Accordingly, for the reasons stated above, **IT IS ORDERED** as follows:

(1) Plaintiff Randall D. Tomlinson's Eighth Amendment condition-of-confinement claims against (a) Defendant Eric Holder, United States Attorney General, and (b) Defendant Jose Santos, Chief Designator of the BOP's DSCC, are **DISMISSED WITHOUT PREJUDICE** for obvious failure to exhaust;

(2) Tomlinson's Fifth Amendment claims challenging his disciplinary conviction and loss of 27 days of GTC will be dismissed without prejudice to Tomlinson fully exhausting those claims under 28 C.F.R. § 542.18 and successfully challenging his disciplinary conviction by way of a 28 U.S.C. § 2241 habeas corpus petition;

(3) Pursuant to 28 U.S.C. § 1404(a), Tomlinson's Eighth Amendment condition-of-confinement and medical claims against (a) Defendant Scott Middlebrook, Warden of USP(I)-Coleman, and (b) Defendant Mark Tidwell, M.D., Medical Director of USP(I)-Coleman, are

**TRANSFERRED** to the United States District Court for the Middle District of Florida for all further proceedings;

    (4)    This action is **DISMISSED** from the docket of the Court; and

    (5)    Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of Defendants Eric Holder and Jose Santos.

This November 7, 2011.

Signed By:
*Karl S. Forester* KSF
United States Senior Judge